## Commonwealth *v.* Fisher, Appellant.

Argued November 22, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John G. McDougall,* Assistant Public Defender, for appellant.

*Vram Nedurian, Jr.,* Assistant District Attorney, with him *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 16, 1973:

On February 8, 1971, Charles Fisher was convicted by a jury in Delaware County of armed robbery and related charges stemming from the armed hold up of an Acme food market in Upper Darby on August 15, 1968. Post-trial motions were denied and a prison sentence was imposed. On appeal the Superior Court unanimously affirmed the judgment without opinion. [220 Pa. Superior Ct. 747, 286 A. 2d 417 (1971)]. We granted allocatur.[1]

The sole question presented is whether the trial court erred in denying a pretrial motion to dismiss the indictments due to the Commonwealth's failure to comply with the provisions of the Interstate Agreement on

---

[1] In a separate trial on January 25, 1971, Fisher was also convicted of criminal charges arising out of the armed robbery of a Horn & Hardart restaurant in Lansdowne on May 12, 1968. An appeal from the order of the Superior Court affirming the sentence imposed in this case is pending in this court via the grant of allocatur, but was not consolidated with the instant appeal.

Detainers, Act of September 8, 1959, P. L. 829, Section 1, 19 P.S. §1431, which provides for trial within one hundred and eighty (180) days after receipt of demand.[2]

The chronology of events critical to the issue involved is as follows: On May 12, 1970, Delaware County authorities lodged five (5) detainers against Fisher who was incarcerated in the New Jersey State Prison at Trenton.

On June 9, 1970, Fisher properly advised the district attorney and the Court of Common Pleas of Delaware County that he was desirous of making final disposition of these detainers in accordance with the Interstate Agreement on Detainers, supra.

This communication reached the offices of the district attorney and court clerk on June 11, 1970. It is

---

[2] 19 P.S. §1431, Article III(a) provides in relevant part: "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

The sanction for failure to afford trial within the statutory period is found in Article V(c): "If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order, dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

this date, therefore, which marks the beginning of the statutory time limit. On August 11th an assistant district attorney wrote to accept the New Jersey authorities' offer of temporary custody, but it was not until September 28th that Fisher was actually taken into custody and returned to this state. At this point in time one hundred and nine (109) days of the one hundred and eighty (180) day period had elapsed.

On October 16, 1970, Fisher received a preliminary hearing on two of the warrants. A prima facie case was found and the matter was bound over for the December grand jury session.

On December 9, 1970 (one hundred and eighty-one (181) days after demand for trial was received), the Commonwealth filed a petition for a continuance and to set the trial date for January 25, 1971. On December 11th, Fisher filed a petition to quash the warrants and transcripts and for a writ of habeas corpus alleging that he was entitled to discharge since he was not tried in the one hundred and eighty (180) day period. This petition was denied and the Commonwealth's petition for a continuance was granted. An appeal to the Superior Court was quashed and the case was remanded for trial.

Prior to the start of trial on February 8, 1971, Fisher renewed his motion for dismissal to no avail.

The Commonwealth admits at the outset that for court calendar reasons it could not try Fisher in time.[3]

---

[3] Appellant states in his brief, uncontroverted by the Commonwealth, that during the applicable time span, June through December 1970, the Delaware County grand jury sat the weeks of September 14th-17th and December 14th-17th and 21st-24th. Criminal trials were held from June 8th to June 26th and September 28th to October 22nd. Hence, the first available grand jury after Fisher's return on September 28th would not meet until one hundred and eighty-six (186) days after the demand was received. The Commonwealth does not furnish us with any reason why it allowed one hundred and nine (109) days to pass before it acted on

However, it seeks to avoid the sanction of this statute by contending that the motion for continuance was timely under rule of *State v. Lippolis,* 55 N.J. 354, 262 A. 2d 203 (1970) and that good cause was shown.

In the above case, the court interpreted the Detainer Agreement to permit the grant of any necessary or reasonable continuance at any time prior to an actual entry of an order dismissing the indictment. In so doing the court freighted the statute with considerations of prejudice and the lack thereof,[4] emanations which we fail to perceive and accordingly refuse to adopt. We read this enactment to provide that the action of continuing the matter must be determined at or prior to the expiration of the one hundred and eighty (180) day period prescribed in the statute. See *Commonwealth v. Martin,* 445 Pa. 49, 282 A. 2d 241 (1971).

The purpose sought to be achieved by this act is to promote and foster prisoner treatment and rehabilitation programs by eliminating the uncertainties which accompany the filing of detainers. See 19 P.S. §1431, Article I, and *Hoss v. State,* 13 Md. App. 404, 283 A. 2d 629 (1971). "The legislation adopting the agreement is obviously remedial in character and, thus, by familiar principal should be construed liberally in favor of the prisoner." *State v. West,* 79 N.J. Super. 379, 384, 191 A. 2d 758, 760 (1963). We agree with the

_____

Fisher's request. The Commonwealth had it chosen to do so could have indicted Fisher as a fugitive during the September grand jury session.

[4] "[T]he statutory power of the court to grant a necessary and reasonable continuance for good cause is available to correct an inadvertent or a negligent oversight by personnel in the prosecutor's office—and in the county clerk's office in failing to send the copy of the prisoner's request to the assignment judge—where, as here, the resultant delay is short and there is no showing that defendant, who had been represented by counsel at least since his request for trial was served, had been prejudiced thereby." *State v. Lippolis,* 107 N.J. Super. 137, 257 A. 2d 705, 712 (1969).

New Jersey Superior Court that "[t]he Legislature adopted the dismissal sanction not because a prisoner would be prejudiced at trial if trial were delayed more than one hundred and eighty (180) days after demand, but because such a sanction for failure to try defendant within a fixed, reasonable period of time after demand was regarded as essential to produce general compliance with the statutory mandate. The sanction is a prophylactic measure to induce compliance in the generality of cases." *State v. Lippolis,* 107 N.J. Super. 137, 145, 257 A. 2d 705, 710 (1969).

While the Commonwealth might arguably, have had good cause to obtain a continuance,[5] it does not have, nor did it attempt to offer, an excuse for its dilatoriness in seeking the continuance.

---

[5] The Commonwealth contends that it was required to obtain the presence of a key witness, who was incarcerated outside Pennsylvania, to testify at the preliminary hearing and that there was a companion case to be prepared and tried against appellant and his alleged accomplice.

It is further asserted that appellant's pretrial maneuvering was a primary source of delay. The force and effect of such contention is blunted by the Commonwealth's own admission that it could not try Fisher in time since a grand jury indictment could not be obtained until mid-December.

Ten days after his return to this state Fisher filed a petition for a writ of habeas corpus alleging that he was being held without a showing of probable cause since he had not been given a preliminary hearing. Thereafter the preliminary hearing was scheduled for the same return day as the habeas petition (October 16, 1970).

In November of 1970, Fisher wrote to Judge REED of the Delaware County Court of Common Pleas complaining of inability to prepare his defense in the county prison where allegedly there were no law books. He then filed a formal petition alleging harassment by prison officials and incompetence on the part of the public defender. This petition was disposed of at a brief hearing held before the one hundred and eighty (180) days elapsed. Neither matter so engaged the Commonwealth's resources and attention that trial had to be delayed.

That the Commonwealth misconceives the operation of the statutory time provisions is best illustrated by the assertion in its brief that since Fisher was not brought into this jurisdiction until one hundred and nine (109) days after date of demand "he was within its jurisdiction for trial, under the strict provision of the Act, for only 71 days." It is further pointed out "appellant was in fact tried within 133 days of his arrival in this jurisdiction." Such facts are of no moment since the statute begins to run from the time the request is received, not from the date the prisoner returns to the jurisdiction which issued the detainers.

The order of the Superior Court and the judgment of the court of original jurisdiction are reversed, and the record is remanded to the last mentioned court with directions to enter an order consonantly with this opinion.