STATE of Iowa, Appellee,

v.

**Donald William WOOD, Appellant.**

No. 57722.

Supreme Court of Iowa.

April 14, 1976.

Richard A. Knock, of Mershon, Snow & Knock, Cedar Falls, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., and David J. Dutton, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

MOORE, Chief Justice.

Defendant appeals his conviction for robbery with aggravation asserting he was denied the right to a speedy trial under the provisions of the Interstate Agreement on Detainers, (IAD), which Iowa adopted in 1966. Its nine Articles are now fully set out in Code section 759A.1. No constitutional questions have been raised. Article III of the IAD requires trial within 180 days after defendant has given notice of his desire to expedite proceedings to clear up a detainer lodged against him while a prisoner in a party state's correctional institution. We find the 180-day limitation period was complied with and therefore affirm defendant's conviction.

I. On February 5, 1973 the Consolidated Gas Station in Waterloo, Black Hawk County, Iowa was held up at gunpoint. The station attendant later identified a photograph of defendant as the person who had robbed him and on that basis, a preliminary information was filed against defendant Donald William Wood February 28, 1973. March 6, 1973 Wood was arrested in Wisconsin for an unrelated Wisconsin parole violation. Six months later, August 29, the attendant was flown to Wisconsin where he positively identified defendant as the perpetrator of the crime. No further action was taken by the Iowa authorities until January 3, 1974.

However, on November 19, 1973 Wood, a prisoner in the Wisconsin State Prison, Waupon, Wisconsin sent the following letter by ordinary mail to the Black Hawk County Attorney:

"Dear Sir:

I understand there is a charge against me from your area.

I would like to get it taken care of at this time if that is possible.

I don't know what has to be done, but I would like to get it cleared up if there is a charge on me from your area.

I am at the Wisconsin State Prison now. I was sentenced from Menonomie, Wis. and Chippewa Falls, Wis.

I have no attorney now.

So if things can be cleared up now I would appreciate it and at this time will agree to extradition to Waterloo, Iowa.

Please advise me as to what's what.

Thanking you,

[Signed Donald W. Wood]"

Forty-five days after this letter was written, a warrant for Wood was sent to the Wisconsin authorities. Then, on January 29, 1974, a letter and forms requesting custody of Wood were sent by the Black Hawk County Attorney to Warden R. L. Gray of the Wisconsin prison. On January 31, 1974, a letter containing the completed and signed forms necessary for compliance with the Interstate Agreement on Detainers was sent by Warden Gray to Black Hawk County Attorney, David Dutton. These forms advised the Black Hawk County authorities of the prisoner's desire for disposition of pending charges, of his status at the Wisconsin prison and of the Wisconsin authorities consent to custody transfer. In the letter accompanying these forms, Warden Gray advised the Iowa authorities that Wood had previously requested speedy disposition of an outstanding Kansas warrant and in Gray's personal opinion the State of Kansas would have first priority over the subject. He assured Mr. Dutton the Black Hawk County Attorney's office would be notified as soon as the Kansas proceedings were completed.

Wood was transferred from Wisconsin to Kansas May 1, 1974, returned to Wisconsin June 14 and turned over to Iowa authorities July 3. A true information was filed against defendant July 5. Defendant's motion to dismiss the charges for failure to afford him a speedy trial was overruled by Judge Damsgaard on August 19. Trial before Judge Engelkes was had on September 3–6, 1974. Defendant was found guilty, sentenced and has appealed.

II. This is a case of first impression in Iowa. No judicial interpretations of the Act have been made in this State and we must therefore rely on precedents from other jurisdictions.

Approximately 30 states and the federal government have adopted the IAD and several have case authority interpreting it. The IAD was adopted in order to assure speedy disposition of detainers lodged against prisoners in party state institutions. The purposes of the Act are more fully set forth in Article I of the Act and will be discussed more fully below.

Of primary concern to this appeal is Article IIIa of section 759A.1 which reads in pertinent part:

"a. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter, may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

This statutory provision requires the prisoner to be brought to trial within 180 days of his giving notice of desire for speedy disposition of charges which form the basis of detainers lodged against him. The first issue presented requires us to determine when the statutory period began to run. Appellant argues the 180 days should be counted from November 19, 1973, the date Wood sent his letter to the Black Hawk County Attorney. The State maintains the period did not begin until January 31, 1974 when IAD forms were completed and

mailed to County Attorney Dutton. For reasons set out below, we find the period began on January 31, 1974.

Article IIIb of section 759A.1 provides: "b. The written notice and request for final disposition referred to in paragraph 'a' hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."

■ III. Because the statute requires trial to be commenced within 180 days of notice regarding disposition of untried indictments "on the basis of which a detainer has been lodged against the prisoner * * *," we must first determine the meaning of detainer as used in the IAD. The term is not defined in the Act and our research indicates that only one court has specifically adopted a definition of it. The court in *United States ex rel. Esola v. Groomes*, 3 Cir., 520 F.2d 830, 838 quotes the following definition found in the U.S. Congressional history of the Federal IAD:

"The word 'detainer', as it is used in the Agreement, is 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' See Senate Report 91–1356, 91st Cong., 2nd Sess., 3 U.S.Code Cong. & Admin.News, p. 4865. This definition of a detainer from the Senate Report finds support in other legislative history of the Agreement and is consistent with the purpose of the Agreement."

This discussion represents sound analysis. The important language for our purposes is "notification filed with the institution."

Although the record is sparse regarding contacts between Iowa and Wisconsin authorities between March 6, 1973 and January 3, 1974, it is clear that no "notification" had been "filed" in Wisconsin prior to January 3, 1974 when the warrant was sent from Black Hawk County. It is equally clear that the filing of this warrant constituted the first official notice filed in Wisconsin which advised defendant that he was wanted to face pending charges in Iowa.

■ IV. Having determined the first official notice of pending charges was filed on January 3, 1974, we must now decide if the prisoner's letter mailed November 19, 1973, some 45 days prior to the detainer's filing was sufficient to commence running of the 180-day statute of limitation. We recognize the Act is remedial and should be liberally construed in favor of the prisoner. *Commonwealth v. Fisher*, 451 Pa. 102, 301 A.2d 605, 607 and citations; Code section 759A.1, Article IX. The basic question here is whether a formal detainer need be on file for a prisoner to commence running of the statute of limitations by giving notice of his desire for a speedy disposition of the underlying charge against him.

■ To answer this question, we must consider the purposes of the IAD. The legislative history of the Act and case law discussions of it agree that one of the major reasons for its passage was to remedy the situation caused by states lodging detainers against a prisoner and merely waiting until his release before pursuing the underlying indictments. This action severely hampered the potential rehabilitation prospects for an inmate covered by several detainers who was uncertain about when, if ever, he would cease to be passed around from one detaining jurisdiction to another. *Groomes*, supra, 520 F.2d at 833. The Act was intended to force jurisdictions with detainers outstanding to try the underlying criminal charge within 180 days or be barred. In this regard, see *Commonwealth v. Fisher*, supra, 301 A.2d at 607; *United States v. Cappucci*, 342 F.Supp. 790, 791 and 3 U.S. Code Cong. and Admin.News 1970, pages 4865–4866.

■ From the foregoing, we see the evil to be remedied by IAD was the existence of detainers lodged against a prisoner rather than the mere presence of untried, but otherwise unpursued criminal charges in a party state. It is not until the jurisdiction having the untried criminal charge

lodges a *detainer based on an indictment, information or complaint* with the state of the defendant's imprisonment that the provisions of the IAD become operative. Prior to that time, no restraints have been placed on the prisoner. On this basis, we find that because no detainer had been filed in Wisconsin at the time of Wood's November 19, 1973 letter, the provisions of section 759A.1, Article IIIa were not yet operative and the letter could not have triggered the running of the statute.

■ V. Finding as we do that a detainer must be on file before a prisoner can invoke the provisions of the IAD, we do not reach the issue regarding the sufficiency of Wood's November 19, 1973 letter to commence running of the statute. At the time of the letter, Wood merely presumed the Iowa authorities would pursue a criminal charge and therefore asked that the procedure be set in motion. The detainer was later filed on January 3, 1974, and the required forms were completed and filed on January 31, 1974. It is from this latter date that we count the statute's running time. See in this regard *Beebe v. State*, Del.Supr., 346 A.2d 169.

■ VI. Although we reject appellant's contention the limitation period began on November 19, 1973, we must still consider his assertion that the Black Hawk County Attorney's failure to seek a continuance before the running of the 180-day period required dismissal of the charges with prejudice. We reach the issue because under this court's analysis the period began running on January 31, 1974, no continuance was ever sought, and the 180-day period ran out on July 30, 1973, over a month prior to trial. Therefore, unless the running of the statute was tolled during a sufficient period between January 31 and September 3, 1974, the conviction must be set aside. *United States v. Mason*, N.D.Ohio, 372 F.Supp. 651, 654; *State v. Mason*, 90 N.J.Super. 464, 218 A.2d 158, 163; section 759A.1, Articles IIIa and Vc.

■ Our discussion now focuses upon section 759A.1, Article VIa, which reads as follows:

"a. In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for so long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

Appellant relies on language in *State v. Mason*, supra, which takes the position with regard to a delay in trial caused by court congestion, that the prosecutor may not permit the 180-day period to expire and then at some time thereafter seek a continuance. See also *Commonwealth v. Fisher*, 451 Pa. 102, 301 A.2d 605, 607. "Once the 180-day period has expired without trial of the indictment (or previous grant of continuance thereof for good cause) the Act in mandatory language dictates its dismissal 'with prejudice.'" *Mason*, supra, 218 A.2d at 163. Appellant asserts this statement from Mason dictates reversal of his conviction. However, the Mason court clearly recognized a distinction between the language of Article III, dealing with "good cause shown" (such as court congestion) and the language of Article VI dealing with tolling the statute during defendant's inability to stand trial, when it said:

"As already noted, nothing can toll the running of the 180-day period except inability of the prisoner to stand trial if so determined by the court. N.J.S. 2A:159A–6, N.J.S.A. [Iowa Code section 759A.1, Article IVa]." *State v. Mason*, supra, 218 A.2d at 163.

■ We find this statement is a sound interpretation of Article VI. Unlike Article III which requires the prosecutor to seek a continuance whenever a prisoner's trial will be delayed for reasons other than his inability to stand trial, Article VI automatically tolls the running of the statute " * * * whenever and for so long as the prisoner is unable to stand trial * * *." The court having jurisdiction over the matter determines whether defendant was unable to stand trial and if so how long the inability existed. Having determined the

number of unavailable days, the court subtracts that number from the total number of days elapsed to determine if the 180-day period has been exceeded. There is therefore no requirement that the prosecution seek a continuance prior to the statute's running when inability to stand trial under Article VI is the reason for delay.

■ VII. Under the facts of this case, it is clear that during the pendency of the Kansas proceeding, Wood was "unable to stand trial" in Iowa. As well stated in *United States v. Mason*, supra:

> "Initially, the Court agrees with the Government that the time period must be tolled while the defendant was standing trial in Michigan. [citation]. This appears to be the only logical result, since if a person is standing trial in one state he cannot be expected to be standing trial in another state simultaneously." 372 F.Supp. at 653.

We now find that Wood was unable to stand trial for purposes of Article VIa during the pendency of the Kansas proceedings and that trial court did not err in overruling defendant's motion to dismiss.

VII. We have carefully considered each of appellant's arguments and find no basis for setting aside his conviction. Appellant's conviction is therefore affirmed.

AFFIRMED.