364 A.2d 391

**COMMONWEALTH of Pennsylvania**

v.

**Thomas G. MERLO, Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

Lee Mandell, Philadelphia, for appellant.

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from a judgment of sentence of two years probation imposed on a charge of passing a bad

check. 18 Pa.C.S. § 4105 (1973).[1] The sole and narrow issue presented involves statutory interpretation of the Agreement on Detainers;[2] it is an issue of first impression, not only in this Commonwealth but in all jurisdictions that are party states to the Agreement on Detainers.

The record reveals the following pertinent facts. On March 21, 1974, a criminal complaint was filed against the appellant, charging the passing of a bad check and theft by deception in connection with the purchase of an automobile. Appellant was arrested on March 24, 1974, arraigned on March 25, 1974 and on April 15, 1974 was held for action of the grand jury. At this time there were two other open cases against the appellant; one involving stolen bonds (bonds case), and the other involving stolen cars (car case). Appellant was indicted on the check case in the latter part of April 1974.

On or about May 7, 1974, appellant was adjudicated a federal probation violator, and was committed to the custody of the United States Attorney for a period of six months. On or about May 15, 1974 appellant was incarcerated in the federal correctional institution in Danbury, Connecticut.

Subsequent to appellant's federal incarceration detainers were lodged against him, and on June 28, 1974, pursuant to Article IV(a) of the Agreement on Detainers, the Philadelphia District Attorney's Office made a request for temporary custody of the appellant.[3]

1. Appellant, after a trial by judge sitting without a jury was found not guilty of theft by deception. 18 Pa.C.S. § 3922 (1973). Hereinafter, where appropriate, the bad check and theft by deception charges will be referred to as the check case.

2. Act of September 8, 1959, P.L. 829, No. 324, § 1, 19 P.S. § 1431 (1964).

3. The Agreement on Detainers requires that the incarcerating jurisdiction have a complementary statute before the Agreement on Detainers becomes applicable. The United States is a party to this Agreement. Interstate Agreement on Detainers Act, 18 U.S.C. App. §§ 1–8 (Supp.1976).

The request for temporary custody listed the bonds offense and the bad checks and theft by deception offenses as the untried indictments pending against the appellant. On August 28, 1974 the appellant was transported to Philadelphia.

The bonds case was listed for trial on September 3, 1974 and September 9, 1974, but on each date a Commonwealth witness failed to appear. Since the appellant's federal sentence was due to expire in late October, 1974, the Commonwealth, on or about October 4, 1974, decided to send the appellant back to Danbury, and to proceed on the three open cases after the appellant's release.

"Appellant was released from Danbury on October 24, 1974." Opinion of the Lower Court at 10.[4] Following his release, the appellant voluntarily returned to Philadelphia, and the Commonwealth decided to proceed on the case at bar, the check case, since the time limitations under Pa.R.Crim.P. 1100 expired on this case on December 10, 1974. Appellant's trial on the check case was scheduled for December 4, 1974.[5]

On December 16, 1974 appellant filed a motion to quash the bad check and theft by deception indictments on the ground that under Article IV(e) of the Agreement on Detainers [6] these indictments should have been dismissed when he was returned to Danbury before he was tried on these charges. On February 25, 1975 the lower court denied the motion to quash, and on May 6, 1975, after trial

4. According to the appellant he was not released until November 20, 1974. The date of his release is not important to our analysis of the issue presented.

5. Appellant was tried on the check case on May 2, 1975; on three separate dates appellant waived compliance with the Pa.R.Crim.P. 1100 time limitations.

6. Article IV(e) provides: "If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such *indictment,* information or complaint *shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.*" (Emphasis added.)

by judge sitting without a jury, appellant was adjudged guilty of the bad checks charge. Appellant filed a motion for a New Trial and In Arrest of Judgment on May 9, 1975 wherein he again argued, *inter alia*, that the bad checks and theft by deception indictments [7] should have been quashed pursuant to Article IV(e) of the Agreement on Detainers. *See* note 6 supra. Post-trial motions were denied on August 25, 1975, and appellant was sentenced on the same day. The instant appeal followed.

■ As noted, the issue before us is one of first impression, and after careful consideration of Article IV (e) of the Agreement on Detainers in light of the well-settled purpose of the Agreement on Detainers we are constrained to conclude that the bad check and theft by deception indictments should have been dismissed with prejudice, *see* note 6 supra, when the appellant was returned to Danbury prior to the disposition of these indictments.

■ "The policy of the Interstate Agreement on Detainers is 'to encourage the expeditious and orderly disposition' of charges and its *purpose 'is to promote and foster prisoner treatment and rehabilitation programs by eliminating uncertainties which accompany the filing of detainers.'* *Commonwealth v. Fisher*, 451 Pa. 102, 106, 301 A.2d 605, 607 (1973)." *Commonwealth v. Wilson*, 231 Pa.Super. 451, 454, 331 A.2d 792, 794 (1974) (emphasis added) (footnote omitted). In *United States ex rel. Esola v. Groomes*, 520 F.2d 830 (3d Cir. 1975) the Court expressed the following observation:

"Those whose problems are addressed in the Agreement are prisoners with outstanding criminal charges from another jurisdiction. The purpose of the provision [Article IV(c)] which this case brings into issue is to

7. The post-trial motions were only properly directed to the bad check charge in that appellant was found not guilty of theft by deception.

minimize the adverse impact of a foreign prosecution on rehabilitative programs of the confining jurisdiction. When a prisoner is needlessly shuttled between two jurisdictions, then any meaningful participation in an ongoing treatment program is effectively foreclosed for two reasons. First, participation requires physical presence and the continuous physical presence of a prisoner is not possible when multiple trips [8] to a foreign jurisdiction are made. Secondly, the psychological strain resulting from uncertainty about any future sentence decreases an inmate's desire to take advantage of institutional opportunities. *Id.* at 837 (footnote by the Court omitted) (footnote 8 added).

Moreover, in applying the provisions of Article IV(e) to the instant case we are guided by the fact that "The Interstate Agreement on Detainers is legislation 'obviously remedial in character and, thus, by familiar principal [sic] *should be construed liberally in favor of the prisoner.'* *Commonwealth v. Fisher,* supra 451 Pa. at 106, 301 A.2d at 607, *quoting, State v. West,* 79 N.J.Super. 379, 384, 191 A.2d 758, 760 (1963)." *Commonwealth v. Wilson,* supra, 231 Pa.Super. at 455, 331 A.2d at 794 (1974) (emphasis added).

Appellant arrived in the receiving state, Pennsylvania, on August 28, 1974. Pursuant to Article IV(c) of the Agreement on Detainers, the Commonwealth had until December 26, 1974 to commence trial on the bonds case and the check case, the untried indictments listed in the request for temporary custody. *See* text supra. Article IV(c) provides: "In respect of any proceeding made possible by this article, trial shall be commenced within one

8. In *Groomes* there were five interruptions of the appellant's Danbury incarceration, during which he was transferred to New Jersey and returned to Danbury without having been tried. Instantly, appellant's incarceration was interrupted once. We do not believe that the policy considerations articulated in *Groomes* are affected by the number of interruptions. Rehabilitative continuity may be just as impaired by one interruption as five.

hundred twenty days [August 28, 1974 to December 26, 1974] *of the arrival of the prisoner in the receiving state . . .."* (Emphasis added.) However, the appellant was returned to Danbury before the Commonwealth commenced trial on these indictments. While we are sensitive to the Commonwealth's argument that they returned the appellant to Danbury in order to minimize any adverse impact on the sending state's (United States), rehabilitative programs and as such were attempting to effectuate the purpose of the Agreement on Detainers, we believe that Article IV(e), *see* note 6 supra, is clear and permits no exceptions to the requirement that appellant not be returned to federal custody untried. The soundness of this conclusion is evident when we analyze the opinion of the lower court and the Commonwealth's position [9] on this issue.

 The lower court concluded that the Agreement on Detainers was not applicable to the instant case. First, the lower court stated: "after a careful reading of the Act, this Court concludes that the only reasonable interpretation of this legislation requires a finding that the Act applies only when the defendant is incarcerated for the full duration of the 120-day period provided in the Act.[10] To interpret the Act in any other fashion would yield the anomalous result of preventing the Commonwealth from proceeding against a defendant after he has been released from out-of-state custody and has returned

9. The Commonwealth in its brief and in its memorandum in opposition to the appellant's motion to quash, which is part of the record, extensively sets forth its analysis of Article IV(e).

10. At first it was not clear to which "incarceration" the lower court was referring. Initially, we read this to be urging the same analysis that the Commonwealth submits, to-wit, Article IV(e) provides the relief to be fashioned when the one hundred and twenty day limitation in Article IV(e) is not complied with. *See* text following this note infra. However, the lower court's concluding language makes it appear that it is not urging this interpretation of the Agreement on Detainers, but is referring to the term of incarceration in Danbury.

to the jurisdiction of the Commonwealth." (Footnote added). The court then concluded: "It is the opinion of this Court that as of the date of Merlo's release from federal custody, October 24, 1974, the Agreement on Detainers was no longer applicable, and the Commonwealth was free to proceed on his outstanding cases under its jurisdiction." While it is true that once a defendant is released from federal custody, the Commonwealth's proceeding on the outstanding indictments no longer has the potential for adverse impact on the sending state's rehabilitative programs, this interpretation would ignore the fact that the problems which the Agreement on Detainers was designed to alleviate had already surfaced. Instantly, when the appellant was transported to Philadelphia and then returned to Danbury he was at all times under a sentence of incarceration in the sending state and the Agreement on Detainers applied. To accept the interpretation that the Agreement on Detainers no longer applies if the appellant is released from the sending state's custody within the one hundred and twenty day period commencing from appellant's arrival in the receiving state, would permit the Commonwealth to transport the appellant from Danbury to Philadelphia any number of times it desired between August 25, 1974 and October 24, 1974 without disposing of the untried indictments.[11] Clearly this interpretation does not enhance the goal of rehabilitative continuity.

The Commonwealth urges a different analytical approach to the issue. The Commonwealth argues that Article IV(c) gave it one hundred and twenty days from August 28, 1974 to commence trial on the bonds case and the check case. One hundred and twenty days from August 28, 1974 was December 26, 1974. Arguing that Article IV(e) only provides the relief afforded a prisoner

11. Assuming, of course, the sending state honored the repeated requests for temporary custody. See Article IV(a) of the Agreement on Detainers.

when his trial is not commenced within one hundred and twenty days, it points out that the trial on the check case was scheduled for December 4, 1974, well before the expiration of the one hundred and twenty day time limitation.

We reject this interpretation. We read Article IV to require commencement of the trial of a prisoner against whom a detainer has been lodged within 120 days of the arrival of the prisoner in the receiving state and, in any event, trial before the prisoner is returned to the sending state. As noted, the essence of the Commonwealth's argument is that Article IV(e) is operative only when the Commonwealth fails to comply with the one hundred and twenty day limitation in Article IV(c). However, the remedy for the failure to bring a prisoner to trial, within one hundred and twenty days, on the indictments, informations, or complaints on the basis of which a detainer has been lodged is specifically provided for elsewhere in the Agreement on Detainers: "[I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order, dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." Article V(c) of the Agreement on Detainers, 19 P.S. § 1431 (1964).

Under the Commonwealth's interpretation, with the remedy afforded a prisoner for the failure to comply with Article IV(c) specifically set out in Article V(c), Article IV(e) is surplusage. Regardless of the time limitation in Article IV(c), Article IV(e) requires that a prisoner not be returned to the custody of the sending state untried; if he is the indictments, informations, or complaints must be dismissed with prejudice.

Moreover, to accept an interpretation of Article IV that as long as the prisoner's trial has commenced within one hundred and twenty days from the date of the prisoner's arrival in the receiving state the Commonwealth is in compliance with Article IV would permit the Commonwealth to repeatedly interrupt the sending state's rehabilitative programs without bringing the prisoner to trial. As one court noted in interpreting a different Article of the Agreement on Detainers: "By that view, this law has wax teeth and is little more than a legislative exercise in futility." *People v. Esposito*, 37 Misc.2d 386, 201 N.Y.S. 2d 83, 88 (1960).

Under Article IV(e) of the Agreement on Detainers, *see* note 6 supra, the appellant, having been returned to federal custody prior to trial on the bad check and theft by deception indictments, the indictments should have been dismissed with prejudice.[12]

Accordingly, the judgment of sentence is vacated and appellant discharged.

12. Appellant was adjudged not guilty of theft by deception, *see* note 1 supra, accordingly that indictment is not before us. Also, the bonds case is not before. However, the request for temporary custody, presented to the warden at Danbury, listed the bonds case as an untried indictment, and, in fact, the bonds case was the case listed for trial on September 3 and September 9 of 1974. Trial on the bonds case not having commenced prior to the appellant's return to Danbury, the holding of the instant opinion would apply to the bond indictments.

In the opinion of the lower court it is stated that the defendant was transported to Philadelphia for disposition of his three untried cases (bonds case, check case and car case). Since the request for temporary custody did not list the car case as an untried indictment for which the appellant was being returned for trial, we intimate no position on whether the rationale of this opinion applies to the car case.