**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**James Orlando QUINTANA, Defendant-Appellant.**

**No. 82CA0739.**

Colorado Court of Appeals, Div. I.

Feb. 9, 1984.

Certiorari Granted June 25, 1984.

Certiorari Dismissed Oct. 1, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Patricia A. Wallace, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Normando R. Pacheco, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, James Orlando Quintana, appeals his convictions of possession of narcotics for sale, sale of narcotics, conspiracy to possess narcotics for sale, and conspiracy to sell narcotics.

Defendant contends the trial court erred both in denying his motion to dismiss pursuant to the Interstate Agreement on Detainers statute, § 24-60-501, et seq., C.R.S. (1982 Repl.Vol. 10) (the Act) and in admitting certain evidence at trial. We affirm.

A.

On July 30, 1981, defendant was indicted by the Denver Grand Jury for several drug-related offenses which allegedly occurred from February through May 1981. At the time of the indictment, defendant was incarcerated in the Federal Correctional Institution in El Reno, Oklahoma, serving a sentence of 15 years imposed by the United States District Court for the District of Colorado. Learning of the Denver indictment, defendant directed his attorney in Denver to take steps to ensure that he be brought to trial on the charges contained in the indictment.

Accordingly, on August 4, 1981, defendant's attorney, on behalf of his client, filed in the District Court for the Second Judicial District in Denver a "Request for Disposition of Untried Complaint" pursuant to the Act. This request was not accompanied by any of the documents required by § 24-60-501, Article III(a) of the Act.

On August 27, 1981, the Denver District Attorney wrote to the El Reno officials and requested, pursuant to the Act, that a detainer be lodged against the defendant. The request was accompanied by copies of the indictment and arrest warrant pertaining to the defendant. Although it is unclear as to when this request was received by the El Reno officials, the trial court found that this request was not administratively processed at El Reno until October 19, 1981, as a result of the illness of the records clerk at El Reno and a backlog of over 200 detainer requests.

The trial court found that the defendant had orally requested, sometime between August 27 and September 24, 1981, that his counselor at El Reno assist him in returning to Denver to stand trial, but nothing resulted from that request. On September 24, 1981, the defendant was administratively transferred by writ of habeas corpus from El Reno to the custody of officials in other jurisdictions for various proceedings, and was not returned to the El Reno facility until December 23, 1981.

On December 29, 1981, defendant was advised by the El Reno officials of the

source and contents of the detainer lodged against him from Denver, and he was transferred to Colorado on January 12, 1982 for trial on the Denver indictment.

Defendant's motion to dismiss the indictment for failure to prosecute pursuant to the Act was denied by the trial court on March 29, 1982. At trial, which began on April 5, 1982, defendant was convicted of the charges here at issue.

## I.

Defendant first alleges that the trial court erred in denying his motion to dismiss because he was not brought to trial within 180 days from August 4, 1981, the date when his attorney filed the "Request for Disposition of Untried Complaint." We disagree.

Article III(a) of the Act provides, in pertinent part, that:

"The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

■ The trial court found that defendant did not initiate a proper request under Article III, since the request filed by his attorney on August 4, 1981 was unaccompanied by any of the requisite documents from the El Reno authorities. Because compliance by a defendant with the Act is essential, *Hughes v. District Court*, 197 Colo. 396, 593 P.2d 702 (1979), we agree with the trial court that defendant's motion was insufficient to trigger the Article III procedures. *People v. Jacobs*, 198 Colo. 75, 596 P.2d 1187 (1979). Consequently, the trial court correctly ruled that the 180-day period specified in the Act did not begin running on August 4, 1981.

## II.

■ Defendant next argues that the trial court erred in its finding that Colora-

do's detainer did not "lodge" pursuant to the Act in El Reno on August 27, 1981, when the Denver District Attorney mailed his request for the lodging of a detainer. The provisions of the Act are not activated until the receiving authority (Colorado) notifies the sending authority (El Reno) to lodge a detainer based on a pending indictment, information, or complaint. *People v. Lincoln*, 42 Colo.App. 512, 601 P.2d 641 (1979); *State v. Wood*, 241 N.W.2d 8 (Iowa 1976). The trial court properly rejected defendant's argument.

## III.

■ Third, defendant argues that the trial court erred in finding that there was no undue delay in the 71 days which elapsed between the lodging of the detainer on October 19, 1981, and the El Reno officials' December 29, 1981 advisement to defendant of his right to request a speedy disposition pursuant to the Act.

Our Supreme Court in *Romans v. District Court*, 633 P.2d 477 (Colo.1981) held that a 56-day delay in advising a prisoner of his right to request speedy disposition under the Act was not in compliance with Article III(c) of the Act, which provides:

"The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based."

However, Romans was in the custody of the same facility for the entire 56-day period. In contrast, here, defendant left the custody of the El Reno officials on September 24, 1981, and did not return to them until December 23, 1981. He was advised pursuant to Article III(c) of the Act on December 29, 1981, six days after his return to El Reno, and transported to Colorado within two weeks thereafter. The trial court held that, under the circumstances, defendant was advised promptly since he

was unable to stand trial during the period of his absence from El Reno. We agree.

Article VI(a) of the Act provides:

"In determining the duration and expiration dates of the time periods ... the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

Several courts have interpreted the "unable to stand trial" provision as being equivalent to a prisoner's presence in a facility in a state or federal jurisdiction other than either the sending state or the receiving state. *See State v. Minnick,* 413 So.2d 168 (Fla.App.1982); *State v. Ristau,* 305 N.W.2d 499 (Iowa 1981); *People v. Jones,* 173 Cal.Rptr. 169, 117 A.2d 1008 (1981); *Young v. Mabry,* 596 F.2d 339 (8th Cir.1979); *State v. Wood, supra.* The trial court adopted that rationale when it found:

"The Defendant had been taken out of the control of the authorities of El Reno by writ and had been transported to other jurisdictions to face other charges pending against him. El Reno had no lawful authority over the Defendant while absent from their custody. They could not have turned the Defendant over to Colorado until he had been returned from the jurisdictions who had prior rights to him. Once they did have custody of the Defendant and the authority to turn him over to Colorado, the El Reno authorities acted expeditiously and in all due deference to the Defendant's rights under the Act."

We have reviewed the record of the evidentiary hearing on this issue, and find that the trial court's ruling is amply supported by that record. There is no evidence of defendant being "hopscotched from one place of confinement to another" to avoid the Act's requirements, as defendant now asserts. *See Hughes v. District Court, supra* (fn. 4).

■ Defendant's trial commenced on April 5, 1982, well within the 180 days which began running on December 29, 1981, the date of the advisement to defendant. Therefore, the trial court properly denied defendant's motion to dismiss the indictment.

**B.**

Defendant also alleges error in the trial court's ruling which allowed evidence of his prior criminal acts. The criminal activities which were the subject of this prosecution occurred between February and April, 1981. At trial, however, evidence was admitted of similar activity by defendant which began in September 1980, and continued into and through the period pertaining to the charges at issue.

A co-defendant, appearing as a witness for the prosecution, was allowed to testify at length about events following her arrest in September 1980 for possession of heroin. This witness testified that, because of this arrest, she "lost" eighteen ounces of heroin belonging to the defendant (it was seized by her arresting officers). Thus, she incurred large attorney's fees and miscellaneous expenses, all of which resulted in her becoming "indebted" to the defendant in the amount of $88,000. She was able to work off her debt successfully by acting as a seller for defendant of other heroin he supplied her. She described this working relationship in some detail, and testified that this selling activity continued until April 1981, when she was arrested pursuant to the indictments against her and defendant. The trial court admitted her testimony as evidence of similar transactions showing plan, scheme, design, and intent.

Defendant contends that admission of this evidence violates the general rule that evidence of other crimes, wrongs, or acts is inadmissible to prove guilt of the crimes charged. CRE 404(b). Such evidence is admissible, however, when offered to prove motive, opportunity, intent, plan, knowledge, identity, *modus operandi,* existence of a continuing course of conduct, or absence of mistake. *People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979); *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959).

■ The proposed evidence (1) must have a valid purpose, (2) must relate to a material issue in the case, and (3) must

have probative value which outweighs the prejudice to defendant resulting from its admission. *People v. Honey, supra.* Here, the record supports the trial court's rulings.

There was a valid purpose for the introduction and admission of the co-defendant's testimony, since it tended to establish a continuing plan on the part of defendant in selling heroin.

■ As well, in order to prove the charge of possession of narcotics for sale, the prosecution had to establish that the defendant intended to induce or to aid another unlawfully to use and possess the drug. *People v. Morris,* 190 Colo. 215, 545 P.2d 151 (1976). The defendant did not concede the establishment of this requisite element, and it had not been established by other competent evidence. Thus, it remained a material issue in the case. *See Huerta v. People,* 168 Colo. 276, 450 P.2d 648 (1969). And, the existence of the plan revealed by the co-defendant's testimony related directly to this material issue.

■ Trial courts have substantial discretion to determine whether evidence of a defendant's similar transactions bears relevance to a material issue in the case, and to consider the probative versus prejudicial effect of that evidence. *People v. Crespin,* 631 P.2d 1144 (Colo.App.1981).

Here, the trial court's determinations concerning the chronological and transactional links connecting the narcotics operations for which defendant was indicted, and by which the co-defendant worked off her debt to defendant, were supported by the evidence. As well, this evidence was sufficient to indicate defendant's continuing scheme, plan, design, and motive in engaging in the criminal activity of heroin sales. Thus, the trial court did not err in ruling that the probative value of the testimony in this regard outweighed any prejudice flowing therefrom.

Accordingly, the judgments of conviction are affirmed.

PIERCE and BERMAN, JJ., concur.