**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robert Junior MAYLE, Appellant.**

Superior Court of Pennsylvania.

Argued March 13, 2001.
Filed July 10, 2001.

David J. DiCarlo, Washington, for appellant.

Marjorie Fox, Assistant District Attorney, Waynesburg, for Com., appellee.

Before: ORIE MELVIN, TODD, and KELLY, JJ.

KELLY, J.

¶ 1 Appellant, Robert Junior Mayle, asks us to determine whether the Commonwealth's failure to bring Appellant to trial within the time periods set forth by Article III and Article IV of the Interstate Agreement on Detainers (IAD), 42 Pa. C.S.A. § 9101, warrant dismissal of the charges against him. We hold that the Commonwealth was required to request a continuance once it became clear that Appellant could not be tried within the time periods mandated under the IAD and that the Commonwealth's failure to do so warrants dismissal of the charges. Thus we reverse the judgment of sentence and dismiss the charges.

¶ 2 The relevant facts and procedural history of this appeal are as follows. Appellant appeals from the judgment of sentence entered on September 24, 1996 in the Greene County Court of Common Pleas following his conviction for aggravated assault,[1] robbery,[2] recklessly endangering another person,[3] burglary,[4] theft by unlawful taking,[5] criminal conspiracy [6] and criminal mischief.[7] Appellant also appeals from the judgment of sentence entered on November 12, 1996 in that same court, following his conviction for burglary, theft by unlawful taking, criminal conspiracy, recklessly endangering another person (two counts), arson and related offenses,[8] credit card violation (four counts),[9] and criminal mischief.

¶ 3 Appellant's convictions resulted from being implicated as a coconspirator in burglaries that occurred on August 2, 1993 ("Tate case") and August 7, 1993 ("Bowers case"). On March 28, 1994, the investigating officer filed complaints in both cases. Appellant was awaiting trial in Kentucky on unrelated charges at the time the complaints were filed. On December 13, 1994, the Commonwealth mailed a Request for Temporary Custody pursuant to Article IV of the IAD. Following the Commonwealth's motions concerning attempts to obtain custody of the Appellant pursuant to the IAD, the court entered orders continuing the rule until January 3, 1995, February 3, 1995, and March 3, 1995.

---

1. 18 Pa.C.S.A. § 2702.

2. 18 Pa.C.S.A. § 3701.

3. 18 Pa.C.S.A. § 2705.

4. 18 Pa.C.S.A. § 3502.

5. 18 Pa.C.S.A. § 3921.

6. 18 Pa.C.S.A. § 903.

7. 18 Pa.C.S.A. § 3304.

8. 18 Pa.C.S.A. § 3301.

9. 18 Pa.C.S.A. § 4106.

¶4 On February 10, 1995, Appellant filed a request for disposition of the charges pursuant to Article III of the Interstate Agreement on Detainers Act (IAD), with the Greene County District Attorney's office. The Greene County Court of Common Pleas received the request that same day. On March 15, 1995, Appellant was returned to the Commonwealth. At the Commonwealth's request, a preliminary hearing scheduled for March 24, 1995 was continued and ultimately held on April 7, 1995. All charges in both cases were held for trial. Criminal informations were filed on April 28, 1995. The court scheduled Appellant's arraignment for May 15, 1995. On that date, Appellant waived arraignment on both cases. The waivers indicated the case would be called on August 24, 1995, with trial scheduled for September 5, 1995.

¶5 On August 24, 1995, Appellant filed an application for writ of *habeas corpus* and a motion to dismiss in both cases. The trial court denied Appellant's motion and application. In response, Appellant filed an interlocutory appeal with this Court. This Court denied Appellant permission to appeal. Appellant then brought a petition to appeal to the Pennsylvania Supreme Court, which also denied Appellant's request for interlocutory relief.

¶6 On August 26, 1996, Appellant began trial in the Tate case. The jury entered a guilty verdict on August 29, 1996. On September 24, 1996, the court sentenced Appellant to a total of six to twelve years incarceration. The Bowers case was tried on September 30, 1996 and the jury entered a guilty verdict on October 2, 1996. On November 12, 1996, the court sentenced Appellant to a total of two to twelve years, consecutive to the sentence imposed in the Tate case. Appellant filed timely post trial motions in both cases, which the trial court denied. Appellant filed a direct appeal in both cases. Appellant failed to file briefs with this Court and both appeals were dismissed without prejudice to Appellant's rights under the PCRA. Subsequently, Appellant filed a PCRA petition to reinstate his appellate rights *nunc pro tunc*, which the trial court reinstated. This timely *nunc pro tunc* appeal followed.

¶7 On appeal, Appellant raises the following issues for our review:

WHETHER THE COMMONWEALTH VIOLATED [APPELLANT'S] RIGHTS UNDER ARTICLE III OF THE INTERSTATE AGREEMENT ON DETAINERS ACT BY FAILING TO BRING HIM TO TRIAL WITHIN 180 DAYS OF HIS WRITTEN REQUEST FOR EXTRADITION FROM KENTUCKY?

WHETHER THE COMMONWEALTH VIOLATED [APPELLANT'S] RIGHTS UNDER ARTICLE IV OF THE INTERSTATE AGREEMENT ON DETAINERS ACT BY FAILING TO BRING HIM TO TRIAL WITHIN 120 DAYS OF HIS RETURN TO PENNSYLVANIA?

WHETHER APPELLANT WAS DENIED HIS RIGHT TO PROMPT TRIAL IN VIOLATION OF RULE 1100(A)(3)?

WHETHER THE VIDEOTAPED STATEMENTS OF [APPELLANT] AND RICK ROBINSON WERE IMPROPERLY ADMITTED INTO EVIDENCE?

WHETHER [APPELLANT] WAS DEPRIVED OF HIS RIGHT TO INTRODUCE REPUTATION EVIDENCE OF THE BAD CHARACTER OF RICK ROBINSON AT THE TRIAL OF [THE BOWERS CASE]?

WHETHER THE COMMONWEALTH PRESENTED SUFFICIENT EVIDENCE TO SUSTAIN [APPEL-

LANT'S] CONVICTION [IN THE BOWERS CASE]?

WHETHER THE COMMONWEALTH PRESENTED SUFFICIENT EVIDENCE TO SUSTAIN [APPELLANT'S] CONVICTION [IN THE TATE CASE]?

WHETHER [APPELLANT'S TRIAL] COUNSEL INEFFECTIVELY REPRESENTED [APPELLANT IN THE TATE CASE], AS HE FAILED TO PRESENT THE EXCULPATORY FACTUAL TESTIMONY OF MELISSA WAUGH?

WHETHER THE VERDICTS [IN THE TATE CASE AND BOWERS CASE] WERE AGAINST THE WEIGHT OF THE EVIDENCE?

(Appellant's Brief at 6–7).

¶ 8 We have consolidated Appellant's first two issues for purposes of our review. In these issues, Appellant essentially argues that the Commonwealth did not comply with Articles III and IV of the IAD by failing to bring Appellant to trial within the time limits mandated by statute. Appellant avers that the Commonwealth had the affirmative duty to request a continuance, once it became apparent that Appellant could not be tried within the time periods set forth in the IAD and that the Commonwealth's failure to do so compels reversal of the convictions and dismissal of the charges. We agree.[10]

¶ 9 Initially, we note that the parties to this case agree that both Articles III and IV govern this case. Generally, Article IV applies when the prosecution initiates the return of a prisoner and Article III applies when the prisoner files an Article III request for trial. *See Casper v. Ryan*, 822 F.2d 1283 (1987). In those cases where the Commonwealth has filed a detainer pursuant to Article IV and the prisoner requests that the outstanding charges be expeditiously resolved under Article III, the receiving jurisdiction has 180 days to bring the prisoner to trial pursuant to Article III. *Commonwealth v. Montione*, 554 Pa. 121, 720 A.2d 738 (1998). By contrast, if the prisoner does not initiate, respond to, or if the prisoner challenges the Commonwealth's detainer, the Commonwealth has 120 days under Article IV to bring the prisoner to trial upon obtaining custody of him. *Id.*

¶ 10 Instantly, the record reflects that the Commonwealth filed its Article IV detainer on December 13, 1994 and that Appellant filed an Article III request for disposition of the charges on February 10, 1995. Therefore, Article III appears to govern this case exclusively. Nonetheless, as the application of either Article III or Article IV does not affect the outcome, we will address Appellant's argument under both statutes.

¶ 11 The IAD, Article III, states in part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he **shall be** brought to trial **within 180 days** after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made

---

**10.** Due to our disposition of Appellant's first two issues we need not reach Appellant's remaining issues.

of the indictment, information or complaint: **Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.** The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

42 Pa.C.S.A. § 9101(III)(a) (emphasis added). Article IV states in pertinent part as follows:

(c) In respect to any proceeding made possible by this article, trial **shall be** commenced within 120 days of the arrival of the prisoner in the receiving state, but **for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.**

42 Pa.C.S.A. § 9101(IV)(c) (emphasis added). Article (VI)(a) of the IAD states:

(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is **unable to stand trial, as determined by the court having jurisdiction of the matter.**

42 Pa.C.S.A. § 9101(VI)(a) (emphasis added).

■ ¶ 12 The United States Supreme Court recently examined the IAD in *Alabama v. Bozeman*, —— U.S. ——, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001). The Su-

preme Court noted that the use of the word "shall" in Article IV of the IAD is absolute, and, therefore, we cannot apply a harmless error analysis when the Commonwealth fails to comply with the strict language of the statute. *Id.* This decision is consistent with our earlier decision in *Commonwealth v. Thornhill*, 411 Pa.Super. 382, 601 A.2d 842 (1992), in which this Court held that the strict 180 day requirement of Article III requires that the Commonwealth move for a continuance prior to the expiration of the 180–day period under Article III if it cannot comply with the statute due to the unavailability of the court. *Id.* A failure to do so warrants dismissal of the charges. *Id.* In so holding, this Court offered the following analysis.

¶ 13 To wit, we find controlling the pertinent language of Article III:

Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

42 Pa.C.S. § 9101, Article III(a). The clear implication of this language is that the court may grant any request for continuance by either party upon a record showing of good cause for a delay.

* * *

In *Commonwealth v. Fisher*, [451 Pa. 102, 301 A.2d 605 (1973)], the Commonwealth filed a motion for continuance one hundred and eighty-one days past the run date, claiming that the defendant could not be brought to trial within the specified time period due to court calendar reasons. Our Supreme Court held that although the Commonwealth had good cause to request a continuance, the statutory time frame created by Detainers Agreement mandated that such

request be made at or prior to the expiration of the one hundred and eighty-day period. Thus, the court found the Commonwealth's dilatoriness inexcusable, stating that:

We agree with the New Jersey Superior Court that "[t]he Legislature adopted the dismissal sanction not because a prisoner would be prejudiced at trial if trial were delayed more than 180 days after demand, but because such a sanction for failure to try defendant within a fixed, reasonable period of time after demand was regarded as essential to produce general compliance with the statutory mandate. The sanction is a prophylactic measure to induce compliance in the generality of cases." *State v. Lippolis,* 107 N.J.Super. 137, 145, 257 A.2d 705, 710 (1969).

*Commonwealth v. Fisher,* 301 A.2d at 607.

Consequently, although we might agree that under the circumstances of this case, delaying appellant's trial beyond the run date was not unreasonable, what we do find unreasonable was the Commonwealth's failure to petition the court for a continuance based on the circumstances of the unavoidable delay as was required by the Act. The Commonwealth's failure to follow this basic procedure was inexcusable where to do so would not have been a burdensome task and would have afforded this court with the necessary record to review appellant's claim.

* * *

It is not defendant's duty to insure that he is being brought to trial within the specified time; that responsibility rests with the Commonwealth. See: *Commonwealth v. Hamm,* 325 Pa.Super. 401, 473 A.2d 128 (1984); *Commonwealth v. Manley,* 282 Pa.Super. 376, 383 n. 7, 422 A.2d 1340, 1343 n. 6 (1980); *Commonwealth v. Garrison,* 277 Pa.Super. 18, 25, 419 A.2d 638, 642 (1980); *Commonwealth v. Walter Brown,* 242 Pa.Super. 397, 401, 364 A.2d 330, 332 (1976); *Commonwealth v. Hagans,* 242 Pa.Super. 393, 396–397, 364 A.2d 328, 330 (1976), *aff'd,* 482 Pa. 572, 574, 394 A.2d 470 (1978).

* * *

[Comparing the IAD to Rule of Criminal Procedure 1100] here we are dealing with a legislatively enacted statute, the interpretation of which is governed by legislative intent and purpose. Consequently, we recognize the legislative purpose underlying this statute and articulated as follows.

The policy of the Interstate Agreement on Detainers is "to encourage the expeditious and orderly disposition" of charges and its purpose "is to promote and foster prisoner treatment and rehabilitation programs by eliminating uncertainties which accompany the filing of detainers." *Commonwealth v. Fisher,* 451 Pa. 102, 106, 301 A.2d 605, 607 (1973). *Commonwealth v. Wilson,* 231 Pa.Super. 451, 454, 331 A.2d 792, 794 (1974) (footnote omitted); *see also Commonwealth v. Merlo,* 242 Pa.Super. 517, 521, 364 A.2d 391, 394 (1976). Because the legislation is remedial in character, it is to be liberally construed in favor of the prisoner so as to effectuate its purpose. *Commonwealth v. Merlo, supra* at 522, 364 A.2d at 394.

*Commonwealth v. Lloyd,* 341 Pa.Super. 107, 491 A.2d [173], [175 (1985)].

*Thornhill, supra* at 844–46 (Pa.Super.1992). The language of Article III and Article IV is identical as it pertains to continuances. Therefore, the rationale in *Thornhill* applies with equal force to those

cases falling under the purview of Article IV.

▇ ¶ 14 In *Commonwealth v. Woods,* 444 Pa.Super. 321, 663 A.2d 803 (1995), as approved by the Pennsylvania Supreme Court in *Commonwealth v. Montione,* 554 Pa. 121, 720 A.2d 738 (1998), *cert. denied,* 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999), this Court applied the language of Article VI(a) of the IAD [11] in determining that the 180–day requirement of Article III is tolled during the period in which, despite the Commonwealth's best efforts, the defendant cannot be brought to Pennsylvania. *Woods, supra,* at 808. However, our decision in *Woods* does not intrude on the prior decisions in *Thornhill, supra,* or *Fisher, supra,* which make abundantly clear that the statute is not tolled during periods where the defendant is unable to stand trial due to the unavailability of the court. *Id.; see also Commonwealth v. Gonce,* 320 Pa.Super. 19, 466 A.2d 1039 (1983) (holding that **where Commonwealth moved for continuance due to court's crowded docket,** 120–day period under Article IV was tolled during period of court's unavailability). Thus, it remains

incumbent upon the Commonwealth to request a continuance prior to the expiration of the applicable time period. *Id.*

¶ 15 In the instant case, the deadline for bringing Appellant to trial pursuant to Article III was August 9, 1995 and July 13, 1995 under Article IV.[12] The Commonwealth knew that trial could not occur until the next term of court, beyond the expiration of both the 120 and 180–day periods, but did not move at any time for a continuance.[13] The trial court found that "the Commonwealth had no need to request a continuance...as the trial date had not been set at the time the 180 days expired." (*See* both Trial Court Opinions, dated January 9, 1997, at 6).[14] However, the trial court cites no authority for the proposition that a continuance may only be requested if a trial date has been set and there is certainly nothing in the rule itself that would support such a proposition. Rather, it is apparent under *Thornhill, supra,* that the Commonwealth was **required** to request a continuance, irrespective of whether a court date had been set, once it became clear that Appellant could not be tried within the mandated 120 and/or 180–

**11.** Article VI(a) states in pertinent part as follows: "the running of [time periods under Article III and IV] shall be tolled whenever and for as long as the prisoner is **unable to stand trial,** as determined by the court having jurisdiction over the matter." 42 Pa.C.S.A. § 9101(VI)(a).

**12.** In its brief the Commonwealth argues that Appellant failed to comply with the provisions of Article III by failing to deliver his request for disposition to the Greene County Court. However, the record reflects that the request filed with the Greene County Court was time stamped in the 'clerk of courts' office on February 10, 1995, thus triggering the running of 180 days. On March 15, 1995, Appellant was returned to Greene County, pursuant to the IAD, thereby triggering the running of 120 days under Article IV.

**13.** We note that had the trial court determined that the Article III 180–day period was

tolled for the 33 days it took the Commonwealth to bring Appellant to Pennsylvania, the outcome would not change. Although, the Commonwealth might have escaped the running of the 180–day period under Article III, the Commonwealth would still be in violation of Article IV for failing to bring him to trial by July 13, 1995, 120 days after his arrival in Pennsylvania. 42 Pa.C.S.A. § 9101(IV)(c).

**14.** The trial court also attempts to distinguish *Thornhill* on the basis that, in *Thornhill,* the case was delayed due to an overcrowded docket, whereas in the instant case the delay was due to the court not being in session for a portion of the 180–day period. This is a distinction without a difference. In both instances, the delay was caused solely by the unavailability of the court and not by the actions of the defendant.

day period. *Id.* Here, as in *Thornhill, supra,* the Commonwealth's disregard for the procedure set forth in the statute requires us to reverse Appellant's convictions and dismiss the charges against him.[15]

¶ 16 Based upon the foregoing, we conclude that the Commonwealth's failure to bring Appellant to trial within the time periods set forth by Article III and Article IV of the Interstate Agreement on Detainers (IAD), 42 Pa.C.S.A. § 9101, warrant dismissal of the charges. Accordingly, we reverse Appellant's convictions in both cases and dismiss the charges against him.

¶ 17 Judgments of sentence reversed; charges dismissed.

---

**15.** Recently, in *New York v. Hill,* 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000), the United States Supreme Court held that the defense could waive its rights under the IAD by **agreeing** to a trial date outside the time periods mandated by statute. In that case, both defense counsel and the prosecution agreed on a trial date, which fell outside of the Article III 180–day period. Upon expiration of the 180 day period, and prior to trial, defense counsel moved to dismiss the charges on Article III grounds. The Supreme Court held that the prior agreement to set a trial date beyond the 180 day period waived any subsequent Article III objection. By contrast, in the present case the trial date provided was not the product of negotiation between the parties. Rather, the trial court provided the parties with a trial date, expressly noting that it was the earliest trial date available. Accordingly, Appellant's failure to object is not evidence of acquiescence, because any objection to the trial date would have been fruitless.