495 A.2d 560

**COMMONWEALTH of Pennsylvania**

v.

**Arnell THOMPSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 18, 1985.

Filed June 21, 1985.

Marilyn J. Gelb, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

Appellant, Arnell Thompson, takes this appeal from the order denying his request for relief under the Post Conviction Hearing Act (PCHA).[1] Appellant raises three issues for our consideration:

1. 42 Pa.C.S. § 9541 *et seq.*

I. Where appellant was not brought to trial within one hundred and twenty days after his arrival in Pennsylvania pursuant to the Interstate Agreement on Detainers, were trial and appellate counsel ineffective for failure to move to dismiss the indictments and for failure to preserve this meritorious issue on direct appeal?

II. Where conviction of robbery and aggravated assault have arisen out of the same transaction, was appellant's consecutive sentence on the aggravated assault charge illegal?

III. Where no record of appellant's sentencing proceeding can be located, and appellant is hereby precluded from raising the issue that the sentencing judge did not state the reasons for his sentence on the record, should appellant be afforded a new sentencing proceeding?

Finding none of these issues to have merit, we affirm.

On April 20, 1974, appellant was arrested for the shooting and robbery of a Philadelphia physician, Dr. Ross Noll. Thereafter, appellant absented himself numerous times from the jurisdiction, as we detailed more fully in appellant's direct appeal. *Commonwealth v. Thompson*, 262 Pa.Super. 211, 396 A.2d 720 (1978). Ultimately, appellant was located in a New York prison and was returned to Pennsylvania on June 23, 1976 by detainer, as per the provisions of the Interstate Agreement on Detainers Act [IAD].[2] Trial was set for July 27, 1976. On July 23, 1976, appellant filed a motion to dismiss under Pa.R.Crim.P. 1100(f). Appellant's case was called for trial on July 27, 1976, but a seven-day continuance was ordered by the court to allow for consideration of appellant's Rule 1100 petition. On August 3, 1976, appellant's Rule 1100 motion was denied. On October 26, 1976 a hearing was held on appellant's motion to suppress. Appellant's trial commenced on October 27, 1976, one hundred and twenty-seven days after appellant's return by detainer from New York.

The relevant provision of the IAD reads:

2. 42 Pa.C.S. § 9101.

(c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

42 Pa.C.S. § 9101 Article IV(c).

The supreme court has stated of the IAD that "[t]he purpose sought to be achieved by this act is to promote and foster prisoner treatment and rehabilitation programs by eliminating the uncertainties which accompany the filing of detainers." *Commonwealth v. Fisher*, 451 Pa. 102, 106, 301 A.2d 605, 607 (1973). Our court, referring to *Fisher*, has noted, "When the defendant causes the delay he is not entitled to be discharged. *See e.g., People v. Leonard*, 18 Ill.App.3d 527, 310 N.E.2d 15 (1974)." *Commonwealth v. Wilson*, 231 Pa.Super. 451, 454 n. 6, 331 A.2d 792, 794 n. 6 (1974). In *Commonwealth v. Washington*, 488 Pa. 133, 411 A.2d 490 (1979), the defendant, six days before the running of the IAD period, consented to a continuance of the trial. On the new trial date, trial was again delayed because the defendant filed a motion to dismiss the charges for violation of the IAD. The supreme court found no violation of the IAD under these facts. The court held that the running of the period was tolled either by the defendant's consent or by his own actions. In so ruling, the court cited to Article VI(a) of the IAD, which provides: *"[T]he running of said periods shall be tolled whenever and for as long as the prisoner is unable to stand trial,* as determined by the court having jurisdiction of the matter." (Emphasis added). *Cf. Commonwealth v. Kripplebauer*, 322 Pa.Super. 317, 469 A.2d 639 (1983) (plurality) (Where defendant merely exercised his right under Pa.R.Crim.P. 307 by requesting a period of thirty days after his preliminary hearing in which to file his pre-trial motions, defendant neither voluntarily waived his speedy trial rights nor consented to their waiver per *Commonwealth v. Washington, supra.*)

■    Returning to the facts of the instant case we find, in keeping with *Washington, supra,* that there has been no violation of the IAD. When appellant filed his Rule 1100 motion, the court ordered that trial, set for July 27, 1976, be continued for seven days. Neither appellant nor his counsel objected to this seven-day continuance. *See Commonwealth v. Diggs,* 334 Pa.Super. 268, 482 A.2d 1329 (1984). As we previously noted, Article IV(c) provides that "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance" 42 Pa.C.S. § 9101 Article IV(c). On the facts of the instant case, we find that the court properly granted a "necessary and reasonable" continuance "for good cause shown," occasioned by appellant's motion to dismiss under Rule 1100(f). When this seven-day continuance is excluded from the time period, it can be determined that appellant's rights under the IAD were not violated because appellant was tried within 120 days of his return to Pennsylvania by detainer. As for appellant's claim that trial and appellate counsel were ineffective for having failed to raise this IAD issue, since counsel will not be found ineffective for having failed to raise a baseless claim, we find appellant's issue to have no merit. *Commonwealth v. Blackburn,* 328 Pa.Super. 483, 477 A.2d 548 (1984).

Appellant next argues that his double jeopardy rights, under both state and federal constitutions, were denied when he received a consecutive sentence on both the aggravated assault charge and the robbery charge. Appellant asserts that these two charges merge for sentencing purposes. We disagree.

■    For two crimes to merge for sentencing, one offense must necessarily have involved the other; that is, the essential elements of one must also be essential elements of the other. *Commonwealth v. Olsen,* 247 Pa.Super. 513, 372 A.2d 1207 (1977). To determine if a merger should be found, a court must examine the facts of the case to determine if there was one, or more than one act and, if

more than one, whether these acts were part of a single transaction. *Commonwealth v. Buser*, 277 Pa.Super. 451, 419 A.2d 1233 (1980). As we said in *Commonwealth v. Crocker*, 280 Pa.Super. 470, 421 A.2d 818 (1980):

> The merger of sentences doctrine is concerned not with conviction but punishment; its purpose is to preclude the imposition of separate punishments for what in practical effect was but a single criminal act. *Thus, in merger of sentence cases, we focus not only on the similarity of the elements of the crimes but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed a single criminal act,* in which case there will be merger and only a single sentence may be imposed, *or more than a single act,* in which case there will be no merger and a sentence may be imposed for each act.

*Id.*, 280 Pa.Superior Ct. at 475, 421 A.2d at 820–21 (emphasis added). *See also Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982).

In the instant case the victim, Dr. Ross Noll, testified that appellant entered the doctor's office and put a sawed-off shotgun to Dr. Noll's chest. Appellant then demanded all of the doctor's money and ordered the doctor to get down on the floor, face down. While Dr. Noll was on the floor, an accomplice entered, tied Dr. Noll's wrists and ankles, and placed a rubber examining glove and hand towel in the doctor's mouth. A wallet, car keys, and gun were stolen from Dr. Noll's person. After an interval of at least two or three minutes, during which time appellant and his accomplice searched the doctor's office, appellant approached Dr. Noll and shot him in the head with the stolen handgun. Mercifully, Dr. Noll did not die from his injury, although he was temporarily blinded.

As set forth in the indictment, appellant was charged under the following subsections of the robbery statute:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree....

18 Pa.C.S. § 3701.

Appellant was also charged with aggravated assault under the following subsections:

(a) **Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

. . . .

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon.

18 Pa.C.S. § 2702.

■ As the previous review of the facts indicates, appellant completed the offense of robbery when he threatened Dr. Noll with a shotgun, bound and gagged the doctor, and then took his wallet, car keys and gun. The aggravated assault occurred afterwards when appellant later shot Dr. Noll. Thus, the facts show that in practical effect appellant committed more than one act. *See Commonwealth v. Bryant,* 282 Pa.Super. 600, 423 A.2d 407 (1980) (Where victims were not only threatened in the course of the robbery but were also subject to additional attacks by defendant when they were kicked or thrown to the ground, the assaults were separate and distinct acts from the robbery and warranted separate punishments.)

Appellant also argues that his sentence on the aggravated assault charge was illegal because the minimum sentence was more than half of the maximum, a violation of 19 P.S. § 1057. Appellant claims that his sentence on this charge was three to five years. Contrary to appellant's assertions, the record reflects that appellant was sentenced

to a term of three to ten years. Therefore, it is apparent that appellant's argument has no merit.

In his last argument, appellant contends that his sentence should be vacated and remanded for re-sentencing because the notes of testimony from the sentencing hearing of March 23, 1977 are not part of the record. Appellant argues that this is a violation of the holding of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). We reject this argument.

We first note that although the *Riggins* case was decided on August 17, 1977, five months after appellant was sentenced, this fact alone does not preclude the applicability of *Riggins*, for the supreme court has applied the *Riggins* rule to sentences that antedated *Riggins* where the appeals from those sentences were "still in the process of litigation when *Riggins* was decided." *Commonwealth v. Mitchell*, 487 Pa. 569, 571, 410 A.2d 758, 759 (1980). *See also Commonwealth v. Kosta*, 475 Pa. 85, 379 A.2d 884 (1977). In the present case, appellant's direct appeal was pending when *Riggins* was decided so, arguably, *Riggins* might apply. However, appellant raised no issues in his direct appeal challenging his sentence on *Riggins* grounds. Instead, appellant for the first time raised this issue in his amended PCHA petition, which was filed on November 5, 1982, more than five and one-half years after appellant was sentenced. When this PCHA petition was filed, the notes of appellant's sentencing hearing could no longer be located and to this date have not been found.

The supreme court has indicated that the PCHA court may consider the length of time between the occurrence of the asserted error and the filing of the PCHA petition, and the explanation for any delay. *Commonwealth v. Alexander*, 495 Pa. 26, 432 A.2d 182 (1981). We relied on *Alexander* in our decision in *Commonwealth v. Jackson*, 329 Pa.Super. 293, 478 A.2d 474 (1984). In *Jackson*, the defendant filed a PCHA petition alleging that he was not informed of his appellate rights and that counsel was ineffective in failing to appeal. The PCHA court

dismissed the defendant's petition without a hearing. We remanded for a hearing since it could not be determined whether there was any merit to the defendant's claim. However, we qualified our holding in this way:

> *We do not mean to infer that a defendant may sit idly by for decades and then seek an appeal from a judgment of sentence which, due to the passage of time, can no longer be supported because of lost records.* We share the concern expressed in the Dissenting Opinion, at 3, in [*Commonwealth v. Hairston*, 323 Pa.Super. 449, 470 A.2d 1004 (1984) (plurality)]. The PCHA was never meant to afford defendants endless opportunities at bombarding the judiciary with frivolous appeals, nor to make a mockery of the concept of judgment finality. Nonetheless, a defendant should be given an opportunity to explain his delay.

*Commonwealth v. Jackson, supra,* 329 Pa.Super. at 300, 301, 478 A.2d at 478 (footnote omitted) (emphasis added).

In the instant case, appellant offers no explanation whatsoever for his delay. In view of appellant's failure to explain his delay of more than five and one-half years in raising this issue, we find no error in the PCHA court's denial of appellant's petition. *Commonwealth v. Courts,* 315 Pa.Super. 124, 461 A.2d 828 (1983).

Moreover, appellant's testimony at his PCHA hearing would seem to indicate that the sentencing judge did offer reasons for his sentence. On this point, appellant testified thusly:

DEFENSE COUNSEL: Do you recall during the course of that sentencing proceeding whether he told you what the reasons were for imposing the sentence he imposed?

APPELLANT: No, I don't.

Q. Do you recall that he told you anything in that courtroom on that day that had to do with why—

[The testimony is briefly interrupted at this point, then resumed.]

Q. —with why the particular sentence was actually imposed that day?

A. No, I don't.

Q. He did not say that on the Record?

A. Why?

Q. Why he imposed the sentence that he imposed?

A. I don't remember. He said a few things. Let me think. If I remember, he mentioned something about he [felt] that I had absconded and I mentioned to him when I wasn't available at certain Court hearings that I was trying to obtain alibi witnesses.

Q. Mr. Thompson, to the best of your recollection did Judge Smith say anything else or give any other reason for imposing the sentence he did impose?

A. No, I don't remember.

Finding none of Appellant's arguments to have merit, we affirm.

Order affirmed.