673 A.2d 923

**COMMONWEALTH of Pennsylvania**

v.

**Charles MONTIONE, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1995.

Filed Feb. 5, 1996.

Reargument Denied April 18, 1996.

Frank W. Nocito, Kingston, for appellant.

William P. O'Malley, Assistant District Attorney, Scranton, on oral argument; Eugene M. Talerico, Jr., Assistant District Attorney, Scranton; Andrew J. Jarbola, III, First Assistant District Attorney, Scranton, on briefs for the Commonwealth, appellee.

Before McEWEN, CIRILLO and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

Charles Montione appeals from a judgment of sentence entered in the Court of Common Pleas of Lackawanna County. We affirm.

The procedural history of this case is undisputed. On October 8, 1993, a criminal complaint was filed charging Montione with, *inter alia,* first-degree murder in connection with the contract killing of Edward "Ned" Tracy.[1] At the time, however, Montione was already incarcerated at the Lycoming County Prison where he was awaiting sentencing after pleading guilty to federal drug charges. On November 4, 1993, Montione was sentenced to 168 months for the drug charges and, subsequently, was transferred to the United States Penitentiary at Lewisburg, Pennsylvania. As the Commonwealth had yet to try Montione on the murder charges, the District Attorney of Lackawanna County, on December 23, 1993, filed a Form V, Request for Temporary Custody, pursuant to Article IV of the Interstate Agreement on Detainers (IAD).

On February 4, 1994, Montione was transferred from Lewisburg and into the custody of the Commonwealth of Pennsylvania. After a preliminary hearing and arraignment, Montione filed an omnibus pre-trial motion on March 17, 1994. This motion included a motion to quash the information, a motion to suppress statements, and a motion for the appointment of an investigator.

On September 1, 1994, Montione filed a motion to dismiss alleging that the Commonwealth had violated the terms of the IAD by failing to bring him to trial within 120 days. Earlier, on July 27, the Honorable John S. Cottone had issued an order finding that the IAD's 120–day limit had been tolled. Judge Cottone issued a similar order on September 22. Finally, on October 14, 1994, Judge Cottone denied the motion to quash and scheduled Montione's trial for November 17.

Subsequently, Montione's case was re-assigned to the Honorable James M. Munley. On November 28, 1994, Montione filed supplemental pre-trial motions. After entertaining arguments on the motion to dismiss, Judge Munley denied said motion on December 20, 1994. Moreover, Judge Munley denied the last of Montione's pre-trial motions on December

1. Tracy was bludgeoned to death in lieu of $14,000 he owed to Montione for drugs.

30, 1994. Ultimately, Montione was convicted of first-degree murder, criminal solicitation and criminal conspiracy. He was sentenced to life plus five-to-ten years imprisonment. In this timely appeal, Montione alleges solely that his motion to dismiss was improperly denied.

At the outset, we note that the "Interstate Agreement on Detainers is a compact among 48 states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States." *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516, 520 (1985).[2] "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Id.* "The purpose sought to be achieved by the [IAD] is to promote and foster prisoner treatment and rehabilitation programs by eliminating the uncertainties which accompany the filing of detainers." *Commonwealth v. Fisher,* 451 Pa. 102, 106, 301 A.2d 605, 607 (1973). To accomplish this goal, the IAD requires, in pertinent part, that "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state." 42 Pa. C.S.A. § 9101 Article IV(c).

Instantly, there is no question that the 120-day clock started to run on February 4, 1994, when Montione was transferred from federal to state custody. Thus, almost a full year had elapsed before Judge Munley commenced Montione's trial on January 5, 1995. At first blush it would appear that the Commonwealth violated the IAD's 120-day provision. This speedy trial provision, however, is not unqualified. Article IV(c) of the IAD provides, in pertinent part, that "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Moreover, Article VI(a) provides that "[i]n determining the duration and expiration dates of the time periods provided in ... this agreement,

2. Louisiana and Mississippi are the only states which have not enacted the IAD. Pennsylvania has codified the Agreement at 42 Pa.C.S.A. § 9101, *et seq.*

the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." Thus, we must determine whether Montione's various pre-trial motions constituted a continuance for "good cause" and/or rendered him "unable to stand trial."

In deciding this issue, we note that our task is an arduous one. This matter has never been definitively addressed by a Pennsylvania appellate court, and, consequentially, we are presented with a case of first impression. Moreover, a review of caselaw from other jurisdictions reveals that strong arguments exist on both sides of the issue, as evidenced by the division among our federal courts. The United States Court of Appeals for the First, Second, Fourth, Seventh and Ninth Circuits have decided that a defendant's pretrial motion does toll the IAD time period. *United States v. Neal*, 36 F.3d 1190 (1st Cir.1994); *United States v. Whiting*, 28 F.3d 1296 (1st Cir.1994); *United States v. Johnson*, 953 F.2d 1167 (9th Cir.), *cert. denied*, 506 U.S. 879, 113 S.Ct. 226, 121 L.Ed.2d 163 (1992); *United States v. Cephas*, 937 F.2d 816 (2d Cir.1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *United States v. Walker*, 924 F.2d 1 (1st Cir.1991); *United States v. Dawn*, 900 F.2d 1132 (7th Cir.), *cert. denied*, 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990); *United States v. Nesbitt*, 852 F.2d 1502 (7th Cir.1988), *cert. denied*, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Scheer*, 729 F.2d 164 (2d Cir.1984); *United States v. Hines*, 717 F.2d 1481 (4th Cir.1983), *cert. denied*, 467 U.S. 1214, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). The Court of Appeals for the Fifth and Sixth Circuits, however, have reached the opposite conclusion. *Birdwell v. Skeen*, 983 F.2d 1332 (5th Cir.1993); *Stroble v. Anderson*, 587 F.2d 830 (6th Cir.1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). Against this backdrop, we begin our own trek in attempting to resolve the issue in manner consistent with justice and fairness.

In deciding issues concerning the IAD, this Court has sought guidance from caselaw concerning Pennsylvania's own

speedy trial rule, Pa.R.Crim.P. 1100. *See Commonwealth v. Woods,* 444 Pa.Super. 321, 663 A.2d 803 (1995); *Commonwealth v. Kripplebauer,* 322 Pa.Super. 317, 469 A.2d 639 (1983). We acknowledge that Rule 1100 analysis certainly is not binding regarding interpretation of the IAD. *See Commonwealth v. Thornhill,* 411 Pa.Super. 382, 601 A.2d 842 (1992) ("Rule 1100 is a procedural rule implemented by our Supreme Court, the interpretation of which is subject to judicial creation," while the IAD is "a legislatively enacted statute, the interpretation of which is governed by the legislative intent and purpose"). We cannot, however, discount the importance of Rule 1100 analysis as a navigational tool in our search for justice when deciding IAD issues. Moreover, we find it desirable to maintain consistency when resolving issues similar to both speedy trial provisions. Obviously, such congruity benefits our state's trial courts, practicing attorneys and other interested parties.

As noted above, the IAD's time provision is tolled when the defendant is "unable to stand trial." Nearly identical language qualifies Rule 1100. Time to trial calculation under Rule 1100 is tolled during delays attributable to "the unavailability of the defendant." Pa.R.Crim.P. 1100(c)(1)(i). Further, in *Commonwealth v. Riffert,* 379 Pa.Super. 1, 549 A.2d 566 (1988), *alloc. denied,* 522 Pa. 602, 562 A.2d 825 (1989), we addressed the issue of whether a defendant's pretrial motion renders him "unavailable" for the purposes of Rule 1100. After noting that the defendant's trial could not commence until after his pretrial motion was decided, we held that "[defendant] thus was unavailable to be tried while his omnibus motion was pending. Implicitly, he had obtained a postponement or continuance of his trial during such time." *Id.* at 10, 549 A.2d at 571. *See also Commonwealth v. Chilcote,* 396 Pa.Super. 106, 578 A.2d 429 (1990), *alloc. denied,* 527 Pa. 615, 590 A.2d 756 (1991); *Commonwealth v. Palmer,* 384 Pa.Super. 379, 558 A.2d 882, *alloc. denied,* 524 Pa. 606, 569 A.2d 1365 (1989).

In reaching this conclusion, we were persuaded by President Judge Spaeth's concurrence in *Commonwealth v. Bond,* 350 Pa.Super. 341, 358, 504 A.2d 869, 878 (1986) (*en banc*):

The critical point as I see it, is that in instituting her constitutional challenge, appellant initiated foreseeable delay for which the Commonwealth was not responsible. The period extending from the date of the trial court's order denying the motion should be excluded from the 180–day period. To permit the period to run while the court deliberated on the motion would be to permit appellant to wield her right to a speedy trial in an unjust and uncontemplated manner.

We believe that our reasoning and decision in *Riffert* is instructive in resolving the case at hand. Our resolution of *Riffert* is consistent with the well established principle that "[w]hen the defendant causes the delay he is not entitled to be discharged." *Commonwealth v. Thompson*, 343 Pa.Super. 468, 471, 495 A.2d 560, 561 (1985) (citing *Commonwealth v. Wilson*, 231 Pa.Super. 451, 454 n. 6, 331 A.2d 792, 794 n. 6 (1974)). This precept has been held to apply equally to Rule 1100 and the IAD. *See Thompson, supra; Commonwealth v. Lloyd*, 341 Pa.Super. 107, 115, 491 A.2d 173, 177 (1985) ("Appellant benefited from the delays of trial. It would be error to reward him further with dismissal of the charges."); *Commonwealth v. Gallo*, 276 Pa.Super. 562, 566, 419 A.2d 601, 603 (1980) ("where a defendant is responsible for the delay he cannot later benefit from the delay that he, himself, caused"). *See also Commonwealth v. Koonce*, 511 Pa. 452, 461–64, 515 A.2d 543, 548–49 (1986). As such, we find that the IAD's speedy trial provision is tolled once the defendant files pre-trial motions.[3]

**3.** In arguing to the contrary, Montione relies almost exclusively upon our decision in *Commonwealth v. Kripplebauer, supra*. We find this reliance to be misplaced. There, a panel of this Court held that the IAD's time mandate was not tolled during the thirty-day period the defendant had requested to file pre-trial motions. As such, we made no decision concerning whether the time provision was tolled once the defendant had, in fact, filed such motions. Moreover, the panel's decision in *Kripplebauer* was predicated upon outdated caselaw concerning a version of Rule 1100 which has since been repealed. Consequentially, we must even question the continued validity of *Kripplebauer*'s narrow holding.

Next, we must decide the length of time for which the provision is tolled. Montione alleges that his pre-trial motions presented simple issues which could have been quickly resolved by the trial court. We find this assertion to be irrelevant. Whether the time utilized by the trial court in resolving the issues was unreasonable is simply not an inquiry suitable for our review. In so finding, we are persuaded by the following language:

> [W]e think it inappropriate for us to scrutinize each defense motion for the purposes of deciding whether a judge should have been able to dispose of it in two days, two weeks or two months. Many factors effect a judge's readiness to render a decision, and we would overstep our role were we to intrude routinely into the trial judge's deliberative process.

*United States v. Taylor*, 861 F.2d 316, 321–322 (1988). As such, we are convinced that it would be imprudent and impractical to exclude less than the full time between defendant's filing of a pretrial motion and its resolution.

Presently, the IAD time clock started to run on February 4, 1994, when Montione was transferred into the state's custody. The clock was tolled forty-one days later, however, on March 17, 1994, when Montione filed his omnibus pre-trial motion. Subsequently, Montione filed various additional pretrial motions. The record reveals that, until December 30, 1994, at least one such pre-trial motion remained unresolved. As such, we find that the entire period from March 17 to December 30 must be excluded from Montione's time to trial.[4] Thus, when his trial ultimately commenced on January 5, 1995, only forty-seven days had elapsed for purposes of computing his time to trial under the IAD. Consequently, we find that Montione is entitled to no relief under the IAD.

Judgment of sentence affirmed.

---

**4.** We acknowledge that some of Montione's pre-trial motions were non-dispositive. We do not believe, however, that non-dispositive motions should be treated differently than dispositive motions. As stated in *United States v. Whiting*, 28 F.3d at 1307, "both types are likely to delay trial and both should be treated the same."