674 A.2d 287

**COMMONWEALTH of Pennsylvania**

v.

**Charles OLIVER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1995.

Filed April 3, 1996.

458

Thomas J. Nolan, Scranton, for appellant.

William P. O'Malley, Assistant District Attorney, Scranton, on oral argument; Eugene M. Talerico, Jr., Assistant District Attorney, Scranton; Andrew J. Jarbola, III, First Assistant District Attorney, Scranton on briefs for the Commonwealth, appellee.

Before McEWEN, CIRILLO and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

On the frigid afternoon of February 16, 1986, the lifeless body of Edward "Ned" Tracy was discovered laying amongst scattered debris on the floor of a dilapidated shed in Lackawanna County. The shed was a concrete structure with large wooden doors. The roof was partially collapsed and there was no glass in the window frames. Blood covered the walls.

The large doors stood partially open and several sets of footprints were visible in the snow. Tracy lay on his back, his face and hands frozen in blood. While the body's frozen state prohibited an autopsy from being immediately performed, it was ultimately determined that Tracy had been bludgeoned to death.

Charles Montione, Frank Montione, and appellant Charles Oliver were subsequently arrested and charged in connection with Tracy's murder. Oliver, who had a separate jury trial, was ultimately convicted of first-degree murder and criminal conspiracy. On January 26, 1995, The Honorable James M. Munley sentenced Oliver to life imprisonment. On appeal, Oliver raises a host of issues for our review. None have merit.

Oliver initially claims that he was not brought to trial within the mandates of Pa.R.Crim.P. 1100. Rule 1100 provides, in pertinent part, that

(a)(2) Trial in a court case in which a written complaint is filed against the defendant where the defendant is incarcerated on that case, shall commence no later than 180 days from the date on which the complaint is filed.

\* \* \* \* \* \*

(e) No defendant shall be held in pre-trial incarceration on a given case for a period exceeding 180 days excluding time described in subsection (c) above. Any defendant held in excess of 180 days is entitled upon petition to immediate release on nominal bail.

\* \* \* \* \* \*

(g) For defendants on bail after the expiration of the 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a certain date.... If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

■ Additionally, we note that Rule 1100 is tolled during any period of delay which has resulted from "the unavailability of the defendant or the defendant's attorney" and "any continuance granted at the request of the defendant or his attorney." Pa.R.Crim.P. 1100(c). Included among such delays is the time between a defendant's filing pre-trial motions and the trial court's dispensing of such motions. *Commonwealth v. Riffert*, 379 Pa.Super. 1, 549 A.2d 566 (1988), *alloc. denied*, 522 Pa. 602, 562 A.2d 825 (1989); *Commonwealth v. Chilcote*, 396 Pa.Super. 106, 578 A.2d 429 (1990), *alloc. denied*, 527 Pa. 615,

590 A.2d 756 (1991). *See also Commonwealth v. Montione,* 449 Pa.Super. 239, 673 A.2d 923 (1996).

Instantly, the clock started to run on August 13, 1993, when the Commonwealth filed a written complaint against Oliver. It was tolled, however, on numerous occasions. From August 16, 1993 to August 26, 1993, Oliver contested extradition from New Jersey to Pennsylvania (10 days excluded). From September 3, 1993 to October 8, 1993, Oliver's preliminary hearing was continued at his request (35 days excluded). On December 13, 1993, Oliver filed pre-trial motions which were not decided until January 28, 1994 (46 days excluded). On March 24, 1994, a hearing pertaining to the Commonwealth's motion to consolidate Oliver's case with those of Frank and Charles Montione was continued, at Oliver's request, until April 28, 1994 (35 days excluded). On June 13, 1994, Oliver filed additional pre-trial motions which were decided on July 5, 1994 (22 days excluded). Oliver filed a motion to dismiss pursuant to Rule 1100 on November 30, 1994, and said motion was denied on December 30, 1994 (30 days excluded). Oliver's jury trial finally commenced on January 17, 1995. Thus, a total of 343 untolled days had passed before Oliver was brought to trial. The Commonwealth concedes that Oliver was incarcerated during this entire period.

Rule 1100(a)(2) requires the Commonwealth to prosecute a case within 180 days of the complaint when the defendant is incarcerated. Moreover, this provision has been applied to defendants, like Oliver, charged with capital offenses. *See Commonwealth v. Wilson,* 543 Pa. 429, 672 A.2d 293 (1996); *Commonwealth v. Spence,* 534 Pa. 233, 627 A.2d 1176 (1993). As such, we find that Rule 1100(a)(2) was clearly violated in the instant case. Our question thus becomes: to what relief, if any, is a defendant, who is charged with a capital offense, entitled for a violation of Rule 1100(a)(2). This is an issue of first impression in our Commonwealth.

Oliver invites us to find that Rule 1100(e) applies equally to defendants charged with capital and non-capital offenses. We decline this invitation. Rule 1100(e) states that

any defendant held in pre-trial incarceration in excess of 180 days is entitled upon petition to immediate release on nominal bail. Under our State's Constitution, however, bail is not available to certain defendants charged with capital offenses. Pa. Const. art. 1 § 14. *See Commonwealth v. Martorano*, 535 Pa. 178, 186, 634 A.2d 1063, 1066 (1993) ("the framers of our constitution recognized the virtual certainty of flight in face of a possible death penalty"). Further, "[i]t is well settled that the particular terms of Rule 1100 'are neither directly granted by nor required by the Constitution.'" *Commonwealth v. Sadler*, 301 Pa.Super. 228, 232, 447 A.2d 625, 627 (1982) (quoting *Commonwealth v. Myrick*, 468 Pa. 155, 161, 360 A.2d 598, 600 (1976)). Thus, to the extent that Rule 1100(e) is in conflict with our state constitution concerning defendants charged with capital offenses, we find that Rule 1100(e) must give way.

█ The defendant in *Spence, supra*, claimed that the remedy in such a case should be dismissal of the charges, pursuant to Rule 1100(g).[1] We do not agree. Rule 1100, as written, only provides for dismissal of charges in cases where the defendant has not been brought to trial within 365 days. No such remedy is prescribed for defendants incarcerated past 180 days. Moreover, our Supreme Court has recently stated that

> the only situation under Rule 1100 which provides for dismissal of the charges is where a defendant on bail is not brought to trial within 365 days of the date on which the complaint against him is filed.... **Rule 1100(g) does not provide a remedy for violation of Rule 1100(a)(2)....** Because Appellant was brought to trial within 365 days, Appellant was not entitled to have the charges against him dismissed.

1. In *Spence*, our Supreme Court never addressed whether discharge was an appropriate remedy, as it found that the prosecution's due diligence excused the fact that the defendant was not brought to trial within the prescribed time period. We find no such diligence in the instant case.

*Commonwealth v. Abdullah,* 539 Pa. 351, 354–55, 652 A.2d 811, 813 (1995). *See also Commonwealth v. Thomas,* 394 Pa.Super. 316, 575 A.2d 921 (1990); *Commonwealth v. Shaffer,* 387 Pa.Super. 234, 563 A.2d 1270 (1989).

■ Thus, in light of the plain strictures of Rule 1100, we find that a defendant who has been charged with a capital offense, as prescribed by Article 1, Section 14 of the Pennsylvania Constitution, is entitled to neither dismissal of charges nor nominal bail. The only remaining remedy, that is consistent with both Rule 1100 and our State's Constitution, would be to allow the defendant to petition the trial court for an immediate trial. In the instant case, Oliver failed to file such a petition. Accordingly, Oliver's first contention fails.[2]

■ Oliver next alleges that Judge Munley erred in allowing into evidence a pipe which was recovered by the police in November of 1994. Oliver claims that the eight-year lapse, between the time of the murder and the actual discovery of the pipe, rendered this evidence irrelevant and overly prejudicial. We disagree. There is no requirement that the item sought to be introduced into evidence is the actual weapon used in the attack. *Commonwealth v. Brown,* 467 Pa. 512, 520, 359 A.2d 393, 397 (1976). The only burden is to justify, from the circumstances of the finding, "an inference of the likelihood of its having been used." *Id.* (citations omitted).

■ Presently, the Commonwealth offered an abundance of evidence to establish that the pipe which was recovered by the police was the actual murder weapon. Frank Montione testified that as he picked Oliver up, on the night of the murder, Oliver emerged from his house carrying a silver pipe, about one inch in diameter and one foot in length. N.T. 1/20/95 at 24–25. Oliver explained to Montione that he had access to the pipe because his father was a plumber. *Id.* at 25–26. Montione then picked up Tracy and drove the three men to a forested area. As the men exited the car, Montione noticed

---

**2.** We note that, even if Oliver had petitioned for immediate trial, he would be entitled to no relief at this time. *See Abdullah, supra* (improper denial of non capital defendant's request for nominal bail could not be remedied on appeal post-trial).

that Oliver was carrying the pipe. *Id.* at 36. After walking for a few minutes, the three men came upon a shed and entered. *Id.* at 35. Uneasy, Montione exited the shed, leaving Oliver alone with the victim. *Id.* at 36–37. Montione heard a "crack." *Id.* at 38. After a few moments, he heard another striking sound. *Id.* Eventually, Oliver emerged from the shed with the pipe in his right hand. *Id.* at 39–40. Montione asked, "[Did] you do it?" *Id.* at 40. Oliver "nodded his head yes." *Id.* Oliver and Montione then returned to the car and drove a "short distance." *Id.* at 40–41. After Montione pulled the vehicle over on the right hand side of the road, Oliver "opened the door and tossed [the pipe] out." *Id.*

Trooper Thomas E. Pavlick, of the Pennsylvania State Police, testified that, after Montione's arrest in the fall of 1993, Montione described how Oliver had disposed of the pipe and accompanied the police to the "approximate area of where the pipe had been thrown from the vehicle." N.T. 1/23/95 at 179. Subsequently, the police searched the area and found a piece of pipe which was consistent with Montione's description. The pipe was discovered two-tenths of a mile from the murder scene, located "30 feet off the [right hand side of the] road and 16 feet into the woods." *Id.* at 180.

Moreover, Dr. Isadore Mihalakis testified that the recovered pipe was consistent with the wounds inflicted upon Tracy. N.T. 1/19/95 at 105. Dr. Mihalakis explained the basis of this determination as follows:

[F]irst of all, [the pipe has] an abraded, at least, a non-smooth surface, and we have an abrasion of the margins of the wound. Second, I said [the murder weapon] was rounded. [The recovered pipe] is rounded. Third, I said the instrument had to have had at least one to one and a half inch area of contact. [The recovered pipe,] when I measured it at an earlier time[,] . . . has one and a quarter inch diameter.

*Id.*

In light this evidence, we find that the Commonwealth clearly established an "inference of the likelihood" that the recovered pipe was used by Oliver in murdering Tracy.

Oliver makes much of the eight-year lapse between the time of the murder and the pipe's recovery. We acknowledge that our research has failed to uncover a Pennsylvania case in which a weapon discovered after a longer period of time was held to be properly admitted into evidence. Remoteness, however, "generally goes to the weight to accorded the evidence, rather than its admissibility." *Commonwealth v. Davenport,* 462 Pa. 543, 556, 342 A.2d 67, 73 (1975). *See also Commonwealth v. Ross,* 266 Pa. 580, 110 A. 327 (1920); *Commonwealth v. Kinnard,* 230 Pa.Super. 134, 142–44, 326 A.2d 541, 545 (1974); *Commonwealth v. Manns,* 229 Pa.Super. 21, 323 A.2d 262 (1974). Moreover, "[a]bsent an abuse of discretion on the part of the trial judge, his determination that evidence was not too remote in time to be admissible will not be overturned." *Kinnard,* 230 Pa.Super. at 142, 326 A.2d at 545.

Instantly, the pipe was discovered in "a wooded area," located a short distance from the lawn of a warehouse. N.T. 1/23/95 at 180. Moreover, even the police who searched the area were forced to take precautions, as they were leery of "snakes, bees, [and] things of that nature." *Id.* at 194. Thus, it appears that the area was effectively inaccessible, and the pipe would naturally go undisturbed for a number of years. As such, we find that Judge Munley did not abuse his discretion in admitting the pipe into evidence. *Davenport, supra; Ross, supra.*

Oliver next alleges that Commonwealth's closing argument contained overly prejudicial statements, thus necessitating a mistrial. First, Oliver directs our attention to the following prosecutorial remark:

> And [defense counsel] wants to say that well, geez, we didn't hear from these people, these people, these people. He has every right to subpoena them if he thinks they're going to say something different. He can do that.

N.T. 1/25/95 at 105.

Oliver claims that this remark improperly placed the upon him the burden to prove his innocence. The record reveals,

however, that upon sustaining defense counsel's objection to the above comment, Judge Munley issued the following curative instruction:

Members of the jury, I sustained the objection, and I'm standing up here because I can't see some of the jurors with the board. I've sustained the objection. There's no burden on the defendant to produce any evidence in his own case. Can every juror follow my instruction?

*Id.* at 106.

We find that any prejudice that may have been created by the prosecutor's comment was sufficiently eliminated by Judge Munley's curative instruction. *See Commonwealth v. Young,* 524 Pa. 373, 394, 572 A.2d 1217, 1227–28 (1990) ("these cautionary statements more than sufficiently untarnished the possible prejudice of the opinion of the prosecutor."). In light of Judge Munley's instruction, we find that Commonwealth's remark clearly did not have the unavoidable effect of creating in the jurors' "minds a fixed bias and hostility toward appellant, so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Johnson,* 516 Pa. 527, 533, 533 A.2d 994, 997 (1987) (citation omitted).

Oliver also alleges that the Commonwealth's closing argument exceeded the bounds of propriety with the following remarks:

Ladies and gentlemen, these people came in and told you, as I said in my opening, pieces of the puzzle. A piece here, a piece here, another piece here, and you put it together. And I submit to you when you do that the puzzle paints a clear picture, Chuck Oliver is a killer, the one who brutally, viciously murdered Ned Tracy.

N.T. 1/25/95 at 118–19.

We find, however, that these remarks "merely summarized the evidence presented at trial with the oratorical flair permitted during argument." *Commonwealth v. Chester,* 526 Pa. 578, 600, 587 A.2d 1367, 1378 (1991). As such, we

cannot say that Oliver was overly prejudiced so as to have required a mistrial. *See id.*

 In his final claim, Oliver alleges that the Commonwealth presented insufficient evidence at trial to warrant his conviction. In reviewing the evidence in the light most favorable to the Commonwealth, we find that this contention is meritless. Testimony at trial, particularly that of Frank Montione, established overwhelmingly that the Commonwealth had proved every element of the charged offenses beyond a reasonable doubt. As such, Oliver's final contention must join his others in failure.

Judgment of sentence affirmed.